IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CR-92-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>SHAMEL ROBERTS, )<br>)<br>Defendant. ) | **ORDER** |

On September 10, 2020, Shamel Roberts ("Roberts" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 120]. On May 4, 2022, the government responded in opposition [D.E. 130] and filed documents in support [D.E. 131]. As explained below, the court denies Roberts's motion for compassionate release.

I.

On October 18, 2017, pursuant to a written plea agreement, Roberts pleaded guilty to conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(b)(1)(B) and (a)(1), 846, and 851. See [D.E. 50, 51, 63]. On February 22, 2018, the court held Roberts's sentencing hearing. See [D.E. 91, 95]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Sent. Tr. [D.E. 118] 4; PSR [D.E. 64]; Fed. R. Crim. P. 32(i)(3)(A)–(B). After resolving the objections, the court found Roberts's total offense level to be 31, his criminal history category to be V, and his advisory guideline range to be 168 to 210 months' imprisonment. See Sent. Tr. at 5–6. After granting the government's downward departure motion and thoroughly considering the arguments of counsel and the section 3553(a) factors, the court sentenced Roberts to 132 months' imprisonment. See Sent. Tr. at 6–26; [D.E. 95].

Roberts did not appeal. On September 10, 2020, Roberts moved for compassionate release [D.E. 120].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable

2

Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in

3

order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Roberts claims to have applied to his warden for compassionate release on June 1, 2020. See [D.E. 120-1] 1. The government argues that Roberts never submitted such an application to the warden and failed to exhaust his administrative remedies. See [D.E. 130] 1, 3, 21; Muhammad, 16 F.4th at 130. The court assumes without deciding that Roberts met the exhaustion requirements and addresses Roberts's motion on the merits.

Roberts seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his health conditions, and his rehabilitation efforts. See [D.E. 120] 1–3, 20–28. Roberts acknowledges that "no single reason would provide a basis for reduction of [his] sentence, but argues these factors together constitute a compelling reason. [D.E. 120] 26.

As for his medical conditions, Roberts argues that his hypertension, hyperlipidemia, an unspecified urinary system disorder, in addition to his weight and history of smoking place him at elevated risk of serious infection from COVID-19. See [D.E. 120] 2, 20–21; [D.E. 120-1] 8. Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Other than risk from COVID-19, Roberts does not argue that the BOP is not adequately treating and monitoring his conditions or that he is unable to provide self-care while incarcerated. See [D.E. 120] 2. Roberts also raises the COVID-19 risks associated with the conditions of a prison environment. See id. at 3, 23–2.

Roberts is vaccinated and boosted. See [D.E. 131] 1. Roberts's vaccinations provide him protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar.

4

28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection... this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Roberts from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, reducing Roberts's sentence because of his risk factors and the

5

general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Nonetheless, the court assumes without deciding that COVID-19, Roberts's health conditions, and his rehabilitation efforts together constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Roberts's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Roberts is 47 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute heroin. See PSR ¶¶ 1–18. Roberts was responsible for brining large quantities of heroin from out of state into Eastern North Carolina. See id. ¶¶ 12–13, 15–16. Roberts maintained a stash house, at which authorities found gang literature, a handgun, 14 rounds of rifle ammunition, a jar with cocaine residue, marijuana residue and paraphernalia, heroin, narcotics packaging equipment, and a stolen vehicle. See id. ¶ 14. Roberts was accountable for 452.14 grams of heroin. See id. ¶ 16. Roberts was an organizer in the drug trafficking organization. See id. ¶¶ 16, 56. Roberts possessed a firearm in connection with the offense. See id. ¶¶ 16, 53. Roberts also attempted to obstruct justice. See id. ¶¶ 14–16, 57.

Roberts's drug dealing is nothing new. Roberts is a longtime drug dealer, who achieved "OG" status in his gang and has state convictions for possession of cocaine with intent to distribute, attempted criminal possession of a controlled substance, felony criminal possession of a controlled substance (two counts), misdemeanor criminal possession of a controlled substance (two counts),

6

resisting arrest, and possession of a schedule I controlled substance. See id. at ¶¶ 21–28; Sent. Tr. at 14. Roberts has performed poorly on supervision. For example, on his most recent term of probation, he violated probation by failing to report as directed, testing positive for drug use, absconding from supervision, and committing new criminal conduct. See id. at ¶¶ 22, 28.

Roberts has made some positive efforts while incarcerated. Cf. Pepper, 562 U.S. at 480. Roberts received his GED. See [D.E. 120-1] 6. He has taken educational and self-improvement courses. See id.; [D.E. 120] 2, 25. Roberts, however, has committed two infractions. See [D.E. 120-1] 6.

The court must balance Roberts's rehabilitation efforts with his serious criminal conduct, his criminal history, his misconduct in prison, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Roberts's health conditions and release plan. See [D.E. 120] 20–21, 28. Having considered the entire record, the section 3553(a) factors, Roberts's arguments, the government's persuasive response, the risk to Roberts from COVID-19, the need to punish Roberts, to incapacitate him, to promote respect for the law, to deter others, and to protect society, the court denies Roberts's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

### III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 120].

7

SO ORDERED. This 15 day of July, 2022.

                                                               JAMES C. DEVER III
                                                        United States District Judge